Lugo-Resendez v. Lynch Your Honor, Jody Goodwin on behalf of Sergio Lugo-Resendez Thank you Ms. Goodlon Whenever you're ready Thank you, Your Honor. May it please the Court. Good morning, Your Honors. I'm Jody Goodwin and I'm representing Sergio Lugo-Resendez the petitioner in this case today, along with my colleague Trina Realmuto who's representing the amici As granted by this Court, we will be sharing our argument and Ms. Realmuto will be discussing the issues of the post-departure bar as well as the equitable tolling issues. I anticipate a maximum of five minutes of your time to discuss the factual record in this case and we would like to reserve an additional five minutes for rebuttal The petitioner in this case, Mr. Lugo-Resendez is a 55-year-old man. He is a father to three U.S. citizen children. He has five United States citizen siblings His parents are both United States citizens and currently he has five United States citizen grandchildren. He became a permanent resident of the United States at the age of 12 in 1973 and he lived in the Rio Grande Valley of Texas for approximately 30 years until such time as he was deported in 2003. He has worked as an x-ray technician in the United States and he presently works as an x-ray technician in Mexico. At his removal hearing in 2003, he was unrepresented and charged with deportability as an aggravated felon for a conviction that was based on a Texas simple possession conviction from 2002 The immigration judge sustained a charge of removability as an aggravated felon and ordered him removed At that time, the time of the order of the removal that is United States v. Hernandez Avalos was precedent in controlling on the aggravated felony issue in this case However, in December of 2006, the Supreme Court effectively vacated Hernandez Avalos In Lopez v. Gonzalez, the court held that possession of a controlled substance would only be considered an aggravated felony for immigration purposes if it was also considered a felony under the federal scheme Basically, this meant that Mr. Lugo Resendez's conviction was never an aggravated felony and he should not have been deported as an aggravated felon In May of 2014, Mr. Lugo Resendez learned of what he termed a new law that may allow him to come back to the United States legally and he asked his daughter Areli to find an immigration attorney to see if that indeed was the case. At that point, Areli Lugo consulted with me and I explained the possibility of filing a motion to reopen and as soon as he learned upon learning of the ability to file a motion to reopen, he immediately gathered the money to file the motion and soon thereafter and within 90 days of finding out about this new law and consulting with me I filed a statutory motion to reopen with the immigration court. The motion set forth both the extraordinary circumstances, that being the change in the law in Lopez v. Gonzalez as well as the diligence with which Mr. Lugo Resendez acted in filing the motion to reopen. The agency below erroneously treated my motion as a regulatory sua sponte motion to reopen which it could not review because of the departure bar and I cede the remainder of my time to Ms. Realmuto to discuss both the issues of the departure bar as well as the equitable tolling. Thank you, Your Honors. Thank you. Thank you. Good morning. May it please the court. Trina Realmuto on behalf of the National Immigration Project and the American Immigration Council. An issue in this case is whether a petitioner's motion is regulatory in nature or statutory in nature. Under this court's case law, the departure bar regulation can bar adjudication of a regulatory motion but not of a motion that is a statutory motion. Contrary to the agency's decision in this case, nine courts of appeals already have held that whether a motion is regulatory in nature or statutory in nature . . . Is any circuit held to the contrary? No, Your Honor. Assuming that we follow those circuits, we're now dealing with a 90-day time period, correct? Correct. And the question is whether or not this particular petitioner did not comply with the 90 days on the facts of the case. It's a question of equitable tolling, correct? Correct. What have the other circuits said with regard to equitable tolling? So, the other circuits, the nine other circuits, have reviewed motions where the motion was untimely and they have basically adopted, which is what we're asking this court to do today, an equitable tolling standard that is consistent with the Supreme Court's equitable tolling standard, which generally requires the existence of due diligence and some circumstance that prevented the timely filing. Assuming we did the same, you would ask us to amend the case for application of that principle? Absolutely, Your Honor. Well, in the facts of this case, as I recall, your client learned of this matter, learned that there was a change in the law that might prevent it himself. Factually, how quickly did he act? Actually, he learned that. It was some period of time before he learned that. But assuming that with equitable tolling we date it, would under equitable tolling principles, as you see them, the period of 90 days run again, when he first learned of it or when he should have learned of it? So, our position, which we believe is consistent with the position of the Supreme Court and the position of the other circuits, is that the 90-day period is tolled until the person learns of the circumstance for which they can then file a motion to do it. And then he has 90 days. Correct. Which is what happened here. He found out in May of 2014 about the new law and the motion was filed within 90 days of his discovering that circumstance. So, our position and the Supreme Court's decision in Lanzano and the Eleventh Circuit's position in Lanzano is that the deadline is tolled until that circumstance occurs. We would ask that the Court, however, create the equitable tolling standard but remand it to the agency to apply that test in the first instance because in this situation, in this case, the agency never reviewed any of the factors that would go into an equitable tolling analysis because the immigration judge simply said, which is what my opposing counsel argues, that, oh, well, it's out of time and, therefore, it's governed by ovaes. I can't look at the merits of the motion. So, the merits of the motion have never been considered nor have the factors that go into an equitable tolling analysis. Has any of the circuits addressed the contention that another person in your client's position had an obligation to monitor developments of law? None of the circuit courts for which I am aware have held that. I would point out that the Board of Immigration Appeals often grants reopening to untimely motions where there's been a change in law that affects either deportability or eligibility for relief. And in this instance, because the aggravated felony charge was the sole basis of deportability, we believe that if the Board had the opportunity to look at the merits of the motion under Lopez, he would not be deportable and they could reopen and terminate proceedings. So, I would be happy to get into, if the Court has questions, why the deadline. I have a question for you from Judge Clement, who has suffered a temporary loss of voice this morning. So I'm going to read it for her. How exactly did your client exercise due diligence? It's been years since the cases on which he relies were decided. Couldn't any petitioner claim ignorance of legal developments to argue that equitable tolling should apply? Thank you for that question, Your Honor. I'd like to start by pointing out that under the Supreme Court's decision in Holland v. Florida, the test about diligence is reasonable diligence, not maximum feasible diligence. But in this situation, our position is that the doctrine of equitable tolling emanates from the common law principles of equity, which requires the Court to look at the particular circumstances faced by the litigant. We believe that the Board did not address that the agency did not address what Mr. Lugo-Resende's particular diligence situation was because they decided the case on the post-departure bar. We believe that that's an analysis that should go first to the agency to make about what circumstances he faced as somebody who had been deported, who had been living in Mexico, and what obligation he may or may not have had to follow the law. But in the Garcia-Carras case, that's exactly what the Board did. They said, we're going to remand this case to the immigration judge to look at the equitable tolling factors, and I believe that Petitioner's Counsel, who in fact represents Mr. Lugo-Resende, submitted in a 28-J letter to this Court. With respect to your question, I think the record is fairly . . . he basically acted . . . he didn't sleep at his rights. As soon as he knew it was possible to file the motion to reopen, he did it. Now, this concept of whether somebody has an obligation to follow the law, well, it's certainly something that the agency should get a chance to weigh in on the first instance, and again, I would note that the Board of Immigration Appeals often reopens untimely motions based on a change of law, whether or not there's a showing that the person had that obligation, but it's certainly something we would want the agency to develop the record on. Okay. So, with respect to the test that we're asking the Court to adopt, it's basically a version of the Supreme Court's . . . something that's consistent with the Supreme Court's test, which is circumstances that prevented timely filing and the existence of some diligence. Again, we think that that's proper to remand to the agency in the first instance, and that would be consistent with this Court's decision in Garcia-Carras. In footnote 1, that's exactly what the panel did. They remanded because . . . to give the agency an opportunity to look at this. It's also consistent with INS v. Ventura, Thomas, Gonzalez, lots of Supreme Court's decisions that say, well, when you have a new test, you send it to the agency to apply that test in the first instance. If the Court has no further questions at this time, I will, if possible, tack this remaining time onto my rebuttal. Yes, you may. Thank you very much. Thank you. Mr. Leo. Good morning, Your Honors. May it please the Court, Attorney Sabatino F. Leo on behalf of the United States Attorney General. This Court's decision in Ovalis v. Holder is controlling and dispositive. Petitioner filed an untimely motion to reopen. As a result of that untimely motion to reopen and the fact that Petitioner has been removed from the United States, that untimely motion to reopen is barred, and the agency is prohibited from reviewing that untimely motion to reopen. The premise that Garcia-Carras supports Petitioner's argument is simply false, and that is what has transpired, I think, throughout this entire case from the very beginning, from the motion to reopen to the appeal to the Board to the brief to this particular Court, is that Garcia-Carras does not stand for the proposition of equitable tolling. What Garcia-Carras . . . What do you say about the other circuit, sir? In response to Your Honor's question previously as well, the other circuits have discussed equitable tolling in the context specifically of basically three specific and distinct areas, where there's deceit or deception on the part of where the alien can uncover some deceit or deception, where there's some fraud, or where there's ineffective assistance of counsel. I think what's important here is there has never been . . . Let me be clear. I understand the Government's position. Do you maintain that there is no equitable tolling, period? Or do you . . . Or rather, is your argument just addressed to the content of the equitable tolling that is applicable? Your Honors, there is equitable tolling with respect to . . . And other circuits have continued to discuss equitable tolling in the concept of deceit, fraud, and ineffective assistance of counsel. I think . . . All right, so we begin. You're accepting that every part of the alien has a statutory right to file one motion, right? And that ordinarily requires that that be done within 90 days. And that the doctrine of equitable tolling is applicable to that 90-day period. So you are down to arguing about the content of the equitable tolling doctrine. Is that correct? That is correct, Your Honor, but I think what is important here is . . . And your argument is that only in cases of fraud or . . . Deceit . . . Or some major impediment to . . . I guess I don't understand what those would consist of. Well, the circuit courts have consistently held that in areas of fraud where the . . . Well, these other circuits, which have been uniform up to this point in our discussion, have they departed over the question of whether equitable tolling is confined to situations of fraud or some major legal impediment? That is correct, Your Honor. There is not . . . Let me re-ask my question. My question was do they agree or disagree over that point? Is there unanimity with that point or not? No, Your Honor, there is not. And I apologize here. There is not unanimity, yes, Your Honor. There is not unanimity with regard to that fact, and there has been equitable tolling for a number of reasons, but what I would like to . . . Well, I'm trying to get . . . give the government's reading of the other circuit's law on this point. What are the other circuits saying about equitable tolling, its content? You say . . . you argue here of a position, but my question is that position is supportable by these other circuits, or are they taking a different viewpoint? Well, there has been no circuit . . . there has been no circuit to date that has argued that specifically equitable tolling would apply to a change in law, ipso facto, meaning that a change in law in and of itself would amount to equitable tolling, that there is a due diligence aspect on the part of petitioners. I understand, and I'm talking about the content of due diligence. Equitable tolling itself requires due diligence. I'm trying to get your . . . exactly what the government's contention is with regard to that. What is the government's view that a departed alien must do to benefit from equitable tolling? In order to . . . for a departed . . . for an alien that has been removed from the United States, in order to benefit from the concept of equitable tolling, the alien must prove that the alien acted with a reasonable degree of due diligence in the fact of coming forward when that particular issue came to light, and now bring that motion to reopen at a reasonable time thereafter. All right, well, let's stop at that. Let's focus on the application of that to a departed alien. We send a man back to Mexico, and he has no lawyer. He's pro se. He may or may not have . . . we're talking about a universe of people. Many of them are not facile with the English language, right? So we're talking about a universe of people that are in Mexico, do not have counsel. Are you saying that they have a duty to monitor the law in some fashion? My position, Your Honor, would be they would have a duty, and I think we need to really be confined to the facts of this particular case, where there has been not an establishment of any due diligence. Petitioners not argue due diligence with respect to their motion to reopen, their appeal to the board, or whatnot. They single-handedly work around that fact in saying, well, when we first found out about the law, we went ahead and tried to seek counsel. But there's not a due diligence argument that we, in fact, undertook this . . . or I undertook these steps of due diligence. This is what I did. I understand the argument that he acted promptly within 90 days when he learned that there had been a change in the law. My question to you is, if we say that that's not enough, it would appear to me we're saying that this universe of people who are departed from the United States who do not have counsel and have language barriers must learn the law as it develops in the United States. I mean, I don't keep current myself. I learn pretty quickly, and I've got a lot of people telling me what the law is. But that, to me, would gut any principle in the real world of equitable tolling. So I'm having real trouble with . . . if your position is a duty to monitor and keep up with the law. Your Honor, it is the government's position that petitioner had to demonstrate before the agency that he acted with due diligence with respect to his particular facts and circumstances. Our position is that he did not act with due diligence. He did not argue that fact. Due diligence before the immigration judge with respect to his motion to reopen. And, again, ergo, he had a situation in which he's arguing that a change in law is enough to reopen his particular case with regard to removability, which he conceded before the agency and did not appeal the law. Okay, I'm with you. Now, counsel opposite says that we ought to simply remand that question of due diligence back to the board. Do you disagree with that? I disagree with that, Your Honor. The immigration judge said what is confined to this particular case and what has been petitioner's argument since day one in 2014 has been this reliance on Garcias-Currias for the prospect that a change in law equals equitable tolling, which equals a motion to reopen. That is not the case. The immigration judge in 2014 . . . Let me ask you, what could this petitioner have done that he didn't do? With respect to . . . With respect to his . . . To get where you say he should be in order to get tolling, is there anything he could have done? What did he . . . You want to talk about the case at hand? Let's talk about the case at hand. What could this man have done? Your Honor, basically what this man could have done is argue due diligence before the immigration judge, which he did not argue due diligence. And again, change in law in and of itself is not enough for this court to equitably toll a motion to reopen. And that is my concern is that . . . Did he really have an opportunity to argue this? I thought he was cut off by the ruling below. Your Honor, specifically with respect to the agency's decision in 2014 with regard to the denial of the motion to reopen and the subsequent deferments without opinion, the immigration judge relying on this court's decision in Ovalis says, this is an untimely motion to reopen. And then, addressing this particular confined argument of the alien before the agency with regard to Garcia-Carreas says unequivocally, Garcia-Carreas does not expound upon this doctrine of equitable tolling to say that a change in law in and of itself amounts to equitable tolling. And I think that's where their inherent slip-up is with regard to petitioner's argument. Garcia-Carreas does not stand for the proposition of equitable tolling. All Garcia-Carreas does is say, statutory motions to reopen are not barred by the post-departure bar. In fact, in the Garcia-Carreas decision, it specifically talks about Ovalis and specifically talks about Navarro. And Ovalis and Navarro, this court's decision, this court's precedential decision say unequivocally, sua sponte motions to reopen, barred by the doctrine of the post-departure bar. Untimely motions to reopen, barred by the doctrine of the departure bar. There is nothing in and of itself of Garcia-Carreas that stands for the proposition of equitable tolling. And not only that, as if you look at this court's decision, precedential. I'm not sure I follow your argument. You seem to be arguing that there is no doctrine of equitable tolling. I'm saying that from the very beginning in this particular case, which this court is confined to, his arguments before you. Your argument is not with the law. Your argument is that this petitioner did not make the argument of equitable tolling in his case when he had an opportunity to do so. He never made the, he never argued due diligence. What he did, and I don't want to speak incorrectly with regard to his argument as well, Your Honor, is he argues that in Garcia-Carreas expounded equitable tolling to include changes of the law. And Garcia-Carreas, and he relies on an... Are you arguing to us or are you arguing to the board? Arguing to the agency. And then he argued to the agency specifically confined to Garcia-Carreas has basically been this petitioner's position since day one in this particular argument. Makes no specific due diligence argument. And what this, what the agency does specifically in its decision in 2014, it states unequivocally, Ovalis v. Holder, this court's precedential opinion, controls that this is an untimely motion to reopen, therefore we cannot entertain your motion to reopen as a result of the departure bar. And Garcia-Carreas does not stand for the proposition that a change in law equals equitable tolling. And I think petitioner continues to manufacture this argument based upon Garcia-Carreas, and a clear reading of Garcia-Carreas states unequivocally that it's a narrow procedural ruling with respect to the applicability of statutory motions to reopen to the departure bar. And as we move further, I think what is important as I started this argument is that Ovalis v. Holder states unequivocally, and it's this panel is bound by Ovalis v. Holder by saying this untimely motion to reopen is essentially barred by the post-departure bar set forth in the regs. Yes, ma'am? I have another question from Judge Clement. The BIA did not address whether equitable tolling applies to statutory motions. Do you agree that we should remand so the BIA can address that question? I'm sorry, the initial component was that if, or am I agreeing that the agency did not address equitable tolling? Yes. The BIA did not address whether equitable tolling applies to statutory motions. Do you agree that we should remand so the BIA can address that question? I think for this particular case, with this particular circumstance, the agency stated unequivocally that the doctrine of equitable tolling did not apply to statutory motions. And the language is clear. And that in citing to Garcia-Carrillas, the immigration states unequivocally that the deadline for motion to reopen does not, the Garcia-Carrillas does not recognize and apply the doctrine of equitable tolling where the aereolian argues a subsequent change in the law. That in and of itself is addressing petitioner's argument, which was very four corners argument with regard to Garcia-Carrillas with respect to a subsequent change in the law equals equitable tolling, which equals my motion to reopen is now statutory because I filed within a reasonable time after these 90 days. And I think that's the underpinning of this argument. It's the foundation of petitioner's argument is basically based upon a false narrative. And that is Garcia-Carrillas equals the doctrine of equitable tolling when there's a subsequent change in law. And Ovalis v. Holder states unequivocally that this court is bound by Ovalis v. Holder unequivocally that a change in law in and of itself is not equitable tolling. And remember, we're in a situation where petitioner, and I know that petitioner's counsel got into the facts and the equities, petitioner conceded removability and has never challenged removability to the agency. I really have trouble with your characterization of this argument that a change in the law in and of itself is equitable tolling. If that were true, there would be no doctrine of equitable tolling, period. Because that's what we're talking about is whether a change in law can be. It can be. Eight circuits have said yes, it can be. And I apologize because I'm not sure I understand the question. But what I'm saying is this petitioner's reliance on Garcia-Carrillo's is basically a false reliance on a decision that's not applicable to the doctrine of equitable tolling. Well, I thought that the IJ, like you're doing, is simply, you simply say the 90-day deadline has gone by and that's the end of the story. I'm sorry, Your Honor? I mean, I just, I'm confused. You are confused. By your contention that somehow we are expounding upon this doctrine of equitable tolling. I'm just trying to understand your argument. And I'll just tell you as candidly as I can. I really think that the force of your argument does not accept the applicability of equitable tolling. I'm not trying to fuss at you. I'm just trying to communicate. I understood your argument. And I am not here to dispute that the doctrine of equitable tolling doesn't apply in any circumstances. I'm saying the petitioner's circumstances has argued to the agency. And you're saying because he forfeited whatever he had. Essentially, you're arguing that he didn't make the argument below. He never made a due diligence argument below. And what he did, and what I'm saying is he relied on specific I think I have your argument then. It is that you're not here today to argue against any of the legal principles that the other side puts forward. It is simply that yes, okay. Eight circuits have said that. But in this case, they didn't make the argument below. They incorrectly relied on Garcia-Carriz for the prospect that equitable tolling equals a change in law. And they never argued anything otherwise with respect to the argument before the agency. And we're in the position now that petitioner has consistently relied on Garcia-Carriz for this doctrine that a change in law automatically amounts to equitable tolling. And, Your Honor, it simply does not. The petitioner specifically did not make a due diligence argument. And that's why the IJ and I must say the IJ does a fine job in this particular circumstance because he points to this court's circuit precedent in Ovalis with regard to untimely motions reopened and the applicability of the post-departure bar. And also that Garcia-Carriz, which is the cornerstone of petitioner's argument, does not in effect support petitioner's argument with regard to the doctrine of equitable tolling for a change in law. And I think that's why, and that's really the concern here is where we are. I am not, and I apologize if my argument gets in front of me with regard to equitable tolling saying in and of itself equitable tolling does not exist. That is not what I am saying whatsoever. For this particular alien with regard to this particular alien's arguments before the agency, it does not exist. Well, let me give you a hypothetical. In fact, a prisoner here is deported and then the law changes because his crime is no longer an aggravated the court says that's not an aggravated felony which means it never was legally. And so, now, he is in Mexico and he doesn't know that the law has changed, but when he finds out the law, he, within 90 days, proceeds. Now, what you're saying is that will not show, that's not sufficient to show equitable tolling. What I'm, depending upon the facts of that particular circumstance, Your Honor, what has he done? I'm asking you a hypothetical. No, no, counsel. I'm asking you a hypothetical. I'm trying to get you away from your song here. What I want you to ask me, you have a man that has been deported and then he goes back to Mexico. He has no lawyer or anything. And he learns that the law has changed. And then within 90 days, he responds. That in and of itself, you say, is not a basis for equitable tolling. That in and of itself, absent due diligence, Your Honor. I think that's our dilemma here. What are the facts that you're speaking in terms of a hypothetical that is not before this court? Counsel, please answer my hypothetical. Now, if you're not going to do that, sit down. Understood, Your Honor. Well, then answer it. I want you to answer the question directly. Yes, Your Honor. Well, do it. With respect, if he can establish some semblance of due diligence and that the law has changed and that he was able to do to file within 90 days, I think, yes, an argument could be made for equitable tolling of those facts. And that's what happened here. I'm not conceding that's what happened here because there's not an argument of due diligence that's not been set forth by the alien in this particular case. I have the argument. If the panel has no further questions, I'm sorry. Mr. Yamato, you have some time on rebuttal. Thank you very much, Your Honors. With respect to the government's argument that Mr. Lugo-Resendez did not set forth equitable tolling arguments below, I'd like to point out that on page 5 of their brief, they state specifically he claimed that the immigration judge should have equitably tolled the filing deadline for his motion to reopen. The immigration judge's decision also says that he argued equitable tolling. I'd also make a note that in the record on appeal at pages 73 to 74, there's a declaration from him that documents his efforts and diligence in this case, in addition to the motion to reopen, which is the record at page 52 to 57. But I'd like to really talk about the elephant in the room here, which is the Supreme Court's decision in Reyes-Mata. Nearly a year ago, the Supreme Court instructed this court to decide whether the 90-day deadline could be equitably tolled. And very interestingly, the timeline with Mata and this case, in April of 2015, the Solicitor General sent a brief to the Supreme Court saying that the Board of Immigration Appeals has authority to equitably toll the statutory deadline. The Solicitor General said that that's logically and doctrinally distinct from the Board's sua sponte authority. A month later, before this court, the government files a brief, doesn't talk about Mata, doesn't talk about equitable tolling, sticks to this idea of carias and ovias. Amici doesn't dispute that this court's holdings say that regulatory motions are governed by carias. In April of 2015, just a month after the government filed its brief in this case, the Solicitor General again tells the Supreme Court that the Board can equitably toll cases, inappropriate cases, and that there's no reason to believe that Congress wanted to prohibit equitable tolling of the deadline, yet allow the Board to apply equitable tolling principles in the sua sponte context. So we have a clear record, and as we know from the Supreme Court's decision in United States versus Providence Journal, the position of the Solicitor General is the position of the United States. So respectfully, I think if you look at the briefing in Mata, that it's quite clear that the government concedes that the motion to reopen deadline is a claim processing rule. I'd also like to note that this case is very similar to Mata, in that Mata involved an untimely motion to reopen. And under this court's prior decision in Ramos Bonilla, what was happening was every equitable tolling request was characterized as a sua sponte request, and the court said we don't have jurisdiction over that. Well, the Supreme Court effectively vacated Ramos Bonilla and said in its decision at page 2156, accordingly, the Court of Appeals should have asserted jurisdiction over Mata's appeal and addressed the equitable tolling question. This is exactly the situation we have here. I think it's disingenuous for the government to sort of say basically that this is also an untimely motion, but there's no obligation for the Court to address equitable tolling principles, when in fact that is the decision of the Supreme Court in Mata, saying it's time to address the equitable tolling principles. And if the Court, if the Fifth, they said we're not sure what the Fifth Circuit's position is on this issue, but if the Fifth Circuit goes the way of the other circuits, that's something that we typically think that we should review. So before this Court today, we're simply asking that you find the deadline is a claim processing rule subject to equitable tolling, and you adopt that standard and remand to the agency. We think that would preserve meaningful access to statutory motions to reopen, which the Supreme Court in Dada and in Kukana and even Mata recognizes is an important procedural safeguard for the purpose of ensuring the lawful disposition of removal proceedings. This is now no longer a regulatory motion. This is codified as statutory motion. The Supreme Court has three times addressed this statutory provision, and each time they admonished courts from infringing upon a person's right to file a statutory motion because they're so integral, they're so important to making sure that the result below is correct. And so we also think that recognizing equitable tolling and sending this case, adopting a standard like all the other circuits have done. I mean, they've basically adopted a standard that's consistent with the Supreme Court's standard. And in every other circuit, IJs, immigration judges, and the Board is duty bound to apply the circuit's equitable tolling standard. And that didn't happen in this case because at the time of the immigration judge's decision, and even now to this date, there is no equitable tolling test announced by this court. And so we would ask that to eliminate this confusion about the post-departure bar, regulatory motions, and statutory motions, that the court announce that the deadline is subject to equitable tolling. Give basic guidelines for the test that's consistent with the Supreme Court's test, and remand to the agency and let the Board do that fact-finding in the first instance. I mean, I really urge the court in response to the government's argument to take a look at the record because he did make out a due diligence claim in his declaration and the motion, which is purely filed in the statutory provision, never asked for regulatory response to reopen below. It's not even cited in the motion to reopen. And he did argue that equitable tolling is appropriate as the government concedes in their brief before this court that he argued for equitable tolling. And so he was arguing for equitable tolling at a time where people, even today, there is no equitable tolling standard announced by this court. Up until the Reyes-Mata decision, immigration attorneys and people who are appearing in cases before the Fifth Circuit knew that if they asked for equitable tolling, that would be treated as a sua sponte discretionary request over which the court would not have jurisdiction. And Reyes-Mata is a big game-changer on that front. Does the court have any further questions? If not, I'd just like to conclude that this court has an important opportunity today to secure uniformity with the Supreme Court and circuit case law, and the court should find that the deadline is claim processing rule subject to equitable tolling, adopt an equitable tolling standard consistent with Supreme Court case law, and remand this case to the agency with instructions to apply the test in the first instance to determine whether petitioner's motion merits equitable tolling. Thank you, Your Honors. Thank you. We'll call the next case for today, which is Randy Hyatt v.